IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DELVIN BERNARD SIMMONS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-1517-M-BK |
| | § | |
| **OFFICER SCOTT MATTHEW** | § | |
| **JAY, OFFICER JEREMY SMITH,** | § | |
| **OFFICER JOSHUA BURNS, and** | § | |
| **OFFICER JAMES STEPHENS,** | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

This case has been referred to the undersigned for pretrial management.  The cause is now before the Court on Defendants' *Joint Motion for Partial Summary Judgment*.  Doc. 60. For the reasons that follow, it is recommended that the motion be **DENIED**.

**I.     FACTS**

This is a 42 U.S.C. § 1983 case arising out of four police officers' alleged use of excessive force in arresting Plaintiff and subsequent deliberate indifference to his serious medical needs.  In his amended complaint, Plaintiff alleges that, following a high speed car chase and foot pursuit, he was eventually surrounded by Defendants at which point he obeyed their orders and laid face down on the ground.  Doc. 45 at 3.  Plaintiff contends that Defendant Smith then struck him on the back of his head with his baton, opening a five-inch gash in his skull. Doc. 45 at 3.  He claims that as Defendant Smith cuffed his hands behind his back, Defendants Stephens and Burns began punching him in the back and kicking him in the ribs, and at some point Defendant Smith also beat him.  Doc. 45 at 3.  Plaintiff alleges that Defendant Jay then kneed him in the left side of his face, breaking his left jaw and orbital bone and knocking him

unconscious.  Doc. 45 at 3.  Plaintiff alleges that when he awoke, Defendants were carrying him by the elbows toward their patrol cars.  Doc. 45 at 3.  His face was bloody, he was in severe pain, he was nauseated from swallowing his own blood, and he subsequently vomited blood in front of Defendants.  Doc. 45 at 4.

      Plaintiff contends that he asked Defendants to take him to the hospital, but they refused. Doc. 45 at 4.  Paramedics were eventually summoned to the scene and Plaintiff claims that when they got there, Defendants huddled around them and, "upon information and belief, explicitly asked the paramedics not to treat or report [Plaintiff's] injuries properly in order to cover up what Defendants had done."[1]  Doc. 45 at 4.  Plaintiff alleges that when one of the paramedics approached him, he told the paramedic that he thought his jaw was broken, but Defendant Jay told the paramedic "ain't nothing wrong with him, he just don't wanna go to jail."  Doc. 45 at 4. As a result, the paramedics merely took Plaintiff's blood pressure and left.  Doc. 45 at 4.  Two officers eventually took Plaintiff to the Dallas County Jail where he was booked.  Doc. 45 at 4.

      A subsequent medical examination revealed that he had multiple closed fractures to his left orbital bone and jawbone where Defendant Jay had kneed him in the face, and he also had bruising on his back and sides.  Doc. 45 at 5.  Plaintiff claims that, as a result of his injuries, he has no feeling on the left side of his face.  Doc. 45 at 5.  He has sued Defendants under section 1983 for excessive force and denial of adequate medical care, and he has also raised a state law claim of assault.  Doc. 45 at 5-7.  Defendants now move for partial summary judgment solely as to Plaintiff's denial of medical care claim.

---

[1] It is not clear from the record who summoned the paramedics.

## II.     SUMMARY JUDGMENT EVIDENCE

A review of the evidence submitted by the parties in this case reveals the following: Defendant Jay testified during Plaintiff's criminal trial that he saw blood, injuries, and swelling on Plaintiff's face. Doc. 67-3 at 12. He testified during his deposition that he never struck Plaintiff, used only open hands while grappling with Plaintiff in an attempt to restrain him, did not see any physical injuries to Plaintiff except some blood, and Plaintiff did not complain about being hurt or injured. Doc. 67-10 at 3-4. Defendants Stephens and Burns averred that they saw blood on Plaintiff's head and saw him vomit. Doc. 62-1 at 2, 7, 11. Defendant Burns said in a sworn internal investigation statement that he merely restrained Plaintiff's legs with his hands while Plaintiff was on the ground, and he did not observe any officer strike Plaintiff with a baton or deploy any knee strikes. Doc. 67-9 at 2. Defendant Smith averred that he struck Plaintiff once on the upper arm and once on the thigh/lower back with his metal baton because Plaintiff was resisting arrest. Doc. 62-1 at 4. He stated that he saw no blood on Plaintiff's head after the arrest, and Plaintiff did not complain of any pain or injury or ask for medical care or to be taken to the hospital. Doc. 62-1 at 4; Doc. 67-11 at 3. Defendant Stephens testified that he did not see the arrest of Plaintiff take place, and he never saw any officer strike or kick Plaintiff. Doc. 67-13 at 6-7. Each Defendant filed an affidavit stating that Plaintiff did not complain of any pain or injury or ask for medical care after his arrest and that they neither interfered with paramedics' treatment of Plaintiff nor saw any other police officer do so. Doc. 62-1 at 1-2, 4-5, 7-8, 10-11. Another police officer, Sarah Lenhart, gave a statement as part of an internal police investigation, stating that she saw Plaintiff vomit twice and that he was bloody after his arrest. Doc. 67-8 at 2. Officer Lenhart also stated that she found several bottles of pain pills on Plaintiff, and he explained that they were for his recent dental work. Doc. 67-8 at 2.

Paramedic Kenneth Hollingsworth testified that when he and his partner arrived at the scene, they approached the police officers to find out what type of run they had been dispatched for, and the officers told them that Plaintiff was complaining of jaw pain. Doc. 62-1 at 30. Plaintiff was sitting in the back of the patrol car during the examination. Doc. 62-1 at 31. He denied any loss of consciousness and said that he had just undergone a dental procedure and his jaw hurt, but the pain was caused when Defendants slammed him to the ground. Doc. 62-1 at 13, 15, 31-32. From there, the paramedics proceeded with their standard assessment because, aside from cleaning up Plaintiff's bloody lip, there was not much else to do. Doc. 62-1 at 31-32. Paramedic Hollingsworth testified that there were no "red flags," such as an inability to speak, that would have suggested a problem with Plaintiff's jaw, and the only way to diagnose a broken jaw is through an x-ray absent an obvious deformity. Doc. 62-1 at 32-33, 35-36. Paramedic Robert Fritz stated in an affidavit that Plaintiff did not mention being assaulted and had only a small cut to his lip. Doc. 62-1 at 15. Paramedic Hollingsworth averred that no police officers prevented either paramedic from assessing Plaintiff's needs, and Plaintiff did not ask to be taken to the hospital. Doc. 62-1 at 34; Doc. 67-12 at 7. Similarly, Paramedic Fritz testified that no police officer had ever gotten in the way of him treating a patient and, in fact, the police tended to be "overly cautious." Doc. 62-1 at 39-40. The paramedics' patient care report states that Plaintiff was being chased by police and received a bloody lip. Doc. 67-5 at 4. It is noted in the report that Plaintiff said he had recent dental work, was complaining of left cheek pain, and he denied losing consciousness. Doc. 67-5 at 4. He was treated with a gauze bandage on his mouth. Doc. 67-5 at 4.

On the other hand, Plaintiff testified that Defendants punched and kicked him for several minutes while he was on the ground after he had been handcuffed, Defendant Smith hit him on

the back of the head with a baton, and he lost consciousness when Defendant Jay kneed him in the face. Doc. 67-1 at 4-8. He stated that Defendants woke him up and forced him to walk to the patrol car. Doc. 62-1 at 25. Following the alleged assault, his nose was bleeding, he had a swollen black eye, and he had an open, bleeding wound on the back of his head. Doc. 67-1 at 8. He testified that he tried to tell the officers that his head was bleeding, but they said not to worry about it. Doc. 67-1 at 8. When the paramedics examined him after speaking with Defendants, he asked them to take him to the hospital because he had been knocked unconscious and thought he had a broken jaw from the beating. Doc. 62-1 at 19-21; Doc. 67-1 at 11. Plaintiff denied telling the paramedics that he had recent dental work. Doc. 67-1 at 11. He stated that when he asked the paramedics to take him to the hospital, one of the police officers interrupted and said "ain't nothing wrong with him. He just doesn't want to go to jail" and shut the door (apparently the door to the patrol car). Doc. 62-1 at 21; Doc. 67-4 at 8. Plaintiff further testified during his criminal trial that he repeatedly asked the officers at the scene to take him to the hospital, but they refused and then made jokes when he started vomiting. Doc. 67-4 at 6-7.

A witness who testified for the defense at Plaintiff's criminal trial stated that Plaintiff had a lot of blood on his face after the police took him into custody. Doc. 67-3 at 18. Ultimately, Plaintiff underwent surgery on his broken jaw, during which, doctors implanted a metal bar and four screws to hold the jaw in place. Doc. 67-4 at 11; Doc. 67-6 at 18, 24-26. He did not undergo surgery to repair his orbital bone because doctors believed it might cause further damage. Doc. 67-4 at 10.

### III.   APPLICABLE LAW

#### A.   *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

#### B.   *Section 1983 and Qualified Immunity*

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under section 1983, Plaintiff must allege facts that show that (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) Defendants were acting under color of state law. See *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The qualified immunity inquiry involves two prongs that the Court must answer affirmatively before an official is subject to liability: (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Pearson*, 555 U.S. at 232.  A court may begin its assessment with either prong.  *Id.* at 236 (*overruling in part Saucier v. Katz*, 533 U.S. 194 (2001)).  A right is "clearly established" for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  In other words, even if a constitutional violation occurred, a defendant is nonetheless entitled to immunity if his conduct was objectively reasonable in light of "law which was clearly established at the time of the disputed action."  *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004).

Moreover, a qualified immunity defense alters the usual summary judgment burden of proof.  *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).  Once an official asserts a qualified immunity defense, the burden shifts to the plaintiff to rebut the defense by establishing a material fact issue as to whether the official's allegedly wrongful conduct violated clearly established law.  *Id.*  The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor.  *Id.*

### C. Constitutional Right to Medical Care

The constitutional right of a pretrial detainee to medical care flows from both the procedural and substantive due process guarantees of the Fourteenth Amendment and is evaluated under the same "deliberate indifference" standard as an Eighth Amendment claim pertaining to denial of medical care to prisoners. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639, 650 (5th Cir. 1996) (*en banc*). A pretrial detainee has a clearly established constitutional right not to be denied, by deliberate indifference, attention to his serious medical needs. *Id.* Deliberate indifference to the serious medical needs of an inmate constitutes the "unnecessary and wanton infliction of pain," proscribed by the Constitution. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A cause of action for deliberate indifference to a detainee's medical needs may be maintained if there is a delay in access to medical care that results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Deliberate indifference also can be shown by proving that officials refused to treat the detainee, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly show that they had a wanton disregard for the detainee's serious medical needs. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). An official's "failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference." *Id.* (citation, alteration, and internal quotation marks omitted). Conversely, deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F. 3d 447, 459 (5th Cir. 2001).

Under the "deliberate indifference" standard, a plaintiff also must establish that the defendants acted with subjective deliberate indifference to his need for medical care. *Brown v.*

*Strain*, 663 F.3d 245, 249 (5th Cir. 2011). To show that level of indifference, a plaintiff must present evidence that: (1) the defendant had "subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn"; (2) the defendant actually drew that inference; and (3) the defendant's response to the risk indicates that he subjectively intended that the harm occur. *Id.* (quotation marks omitted). Deliberate indifference thus requires actual knowledge and conscious disregard of the risk of harm to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official's knowledge of a substantial risk of harm may be inferred if the risk was obvious. *Id.* at 825. Nevertheless, "courts should be careful to ensure that the requirement of subjective culpability is not lost. It is not enough merely to find that a reasonable person would have known, or that the defendant should have known . . . ." *Id.* at 843 n.8.

## IV.   PARTIES' ARGUMENTS

Defendants allege that only the laceration to Plaintiff's head, abrasions, and possibly bruising and swelling to areas not covered by clothing would have been visible to Defendants while he was in their custody, and those injuries do not rise to the level of a "serious medical need" as a matter of law. Doc. 61 at 9-11. As to Plaintiffs' broken jaw and orbital bone, Defendants assert that the evidence establishes that they did not interfere with the paramedics' treatment of Plaintiff. Doc. 61 at 11-14. Further, Defendants maintain that there is no evidence that any of them were subjectively aware of the facial fractures as one of the paramedics testified that such a diagnosis requires an x-ray, and the paramedics themselves did not observe any symptoms alerting them to the possibility that Plaintiff's jaw was broken. Doc. 61 at 14-15. Defendants further assert that there is no evidence that any of their actions caused a delay in Plaintiff's medical treatment that materially worsened his medical condition, or that any Defendants were deliberately indifferent to such a risk. Doc. 61 at 15. As such, they claim that

Plaintiff has not established that a constitutional violation occurred.  Alternatively, Defendants claim that they are entitled to qualified immunity because their conduct, even if unconstitutional, did not violate clearly established law as they were entitled to rely on the medical expertise of the paramedics' judgment that Plaintiff did not require immediate transport to a hospital.  Doc. 61 at 18-21.

 Plaintiff responds that his injuries, consisting of a loss of consciousness due to head trauma, inability to walk on his own, bleeding from his head, and a face that was visibly swollen and bloody, were objectively serious such that even a lay person would recognize his need for medical treatment.  Doc. 66 at 8-9.  Plaintiff maintains that a rational jury could conclude that Defendants were subjectively aware that he faced a substantial risk of harm because the harm was so obvious given the nature of the beating they had administered and the resulting bleeding and swelling.  Doc. 66 at 10-11.  Plaintiff also notes that there is evidence in the record to support his contention that Defendants instructed the paramedics to "look the other way" when interacting with Plaintiff, including (1) the paramedics' failure to properly fill out the patient care report documenting their interaction with Plaintiff; (2) the paramedics' notation on the report that Plaintiff only had a cut lip when numerous officers on the scene and at the jail testified that Plaintiff was bleeding from his head and face; and (3) conflicting testimony between Defendants and the paramedics about whether the paramedics examined Plaintiff in the back of a patrol car or in the ambulance.  Doc. 66 at 11-13.

 Plaintiff also argues that Defendants are not entitled to qualified immunity because any reasonable officers in their position would have known that they were violating Plaintiff's rights as well-established precedent does not allow police officers to ignore a pretrial detainee's obvious head trauma, refuse to take him to the hospital, or tell paramedics not to treat him.  Doc.

66 at 14. Plaintiff maintains that Defendants also cannot rely upon the medical determinations of the paramedics to obtain qualified immunity because it would have been evident to Defendants that Plaintiff was receiving inadequate treatment given his extensive injuries, particularly if a jury were to find that Defendants interfered with the paramedics' treatment. Doc. 66 at 14-15. The Court finds Plaintiff's arguments persuasive.

V.   ANALYSIS

   A.  *Whether Plaintiff's Injuries Were Serious*

At the summary judgment stage of the proceedings, the Court must "draw all reasonable inferences in favor of the nonmoving party" and thus takes Plaintiff's version of the facts as true. *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002). At the outset, the undersigned must determine whether the injuries alleged by Plaintiff were severe enough, as a matter of law, to constitute a serious medical need. *Domino*, 239 F.3d at 756. Plaintiff says he lost consciousness, had a five-inch gash on the back of his head that required staples, had a bloody face, was vomiting blood that he had swallowed, had a black eye, was suffering from jaw pain and complaining that he might have a broken jaw, and was bruised and swollen. Moreover, other witnesses described Plaintiff as having "a lot" of blood on his face and being "bloody." It was later determined that Plaintiff had a broken jaw and orbital bone.

   Upon careful consideration of the law and the parties' arguments, the Court is persuaded that Plaintiff's injuries constituted a serious medical need. Defendants first seek to parse Plaintiff's injuries, claiming that his abrasions and bruises did not constitute serious medical needs, and then proceed to separately analyze the seriousness of his broken bones. But the injuries must be analyzed in their totality and in the light most favorable to Plaintiff. Viewed in that light, Defendants' case law is not persuasive. *See* Doc. 61 at 10 (citing *Jackson v. Fernauld*,

11

104 F. App'x 443 (5th Cir. 2004) (affirming summary judgment on a section 1983 claim based on a failure to promptly treat a broken thumb because the inmate's allegations amounted "to no more than assertions of negligence, malpractice, and failure to provide additional treatment"); Sherrer v. Stephens, 50 F.3d 496, 496-97 (8th Cir. 1994) (granting summary judgment where conservative treatment of a broken index finger was insufficient to sustain a deliberate indifference claim); Gaudreault v. Municipality of Salem, 923 F.2d 203, 207-08 (1st Cir. 1990) (affirming that multiple bruises to the forehead, eyes, nose, left ribs, right flank and left shoulder, a corneal abrasion, and an abrasion on the upper back did not amount to "serious medical needs"); Jesionowski v. Beck, 937 F. Supp. 95, 102-03 (D. Mass. 1996) (holding that a forehead laceration that caused profuse bleeding during a 30-minute delay in treatment and resulted in no permanent damage was not a serious medical need); Turner v. Dallas County Jail, No. 04-cv-2165-H, 2006 WL 1388441, *1, 4 (N.D. Tex. 2006) (Sanders, J.) (adopting the magistrate's recommendation that a detainee's suffering from headaches, dizziness, shortness of breath, diarrhea, and a fever for ten days due to dust exposure was not an objectively serious medical need that amounted to a denial of his constitutional rights)).

      The cases cited by Plaintiff, though not binding, are still more relevant. For example, in *Davis v. Ayers*, the court denied a motion to dismiss filed by a physician's assistant and nurse in a case initiated by a prisoner who presented to the medical unit with jaw pain and a bloody mouth following a collision on a softball field. No. 1:12-CV-61, 2012 WL 7149470, *1, 6-8 (M.D. Ga. 2012), *adopted by* 2013 WL 593961 (M.D. Ga. 2013). The prisoner was ultimately determined to have a broken jaw, and the judge found that this "surely qualifie[d] as a serious medical need." *Id.* at *5. Similarly, in *Luevano v. Peralta*, the court denied summary judgment where the plaintiff alleged that two police officers beat and kicked him after he was handcuffed,

breaking his eye socket and bloodying his face, and would not allow paramedics to treat him. No. EP-04-CA-0431-FM, 2005 WL 1750381, *2, 4 (W.D. Tex. 2005). The court found that because the plaintiff was "obviously and visibly bleeding from his face and mouth," the officers "were subjectively aware of a substantial risk of serious medical harm and were deliberately indifferent to that risk." *Id.* at 4. The facts in *Thomas v. City of Galveston*, 800 F.Supp.2d 826 (S.D. Tex. 2011) are also on point. There, the police officer defendants beat and kicked the handcuffed plaintiff until he lost consciousness and was bloody and then did not obtain medical treatment for him. 800 F.Supp.2d at 840. The court recognized the seriousness of the plaintiff's medical needs in holding that the risk of harm from denying medical attention to a person who was kicked until he was knocked unconscious would be obvious to any reasonable person. *Id.* The Court concludes likewise here -- that Plaintiff's injuries constituted a serious medical need.

  B. *Whether Defendants Interfered With Plaintiff's Medical Care*

  Defendants assert in their summary judgment motion that they did not deny Plaintiff adequate medical care or interfere with the paramedics' treatment of him. Doc. 61 at 11-14. Plaintiff asserts that there is sufficient evidence in the record to support the inference that Defendants interfered with the paramedics' examination and treatment of him. Doc. 66 at 12-13. Plaintiff points out that the paramedics' testimony on several facts is contradicted by the testimony of other witnesses. For example, a witness at Plaintiff's criminal trial testified that Plaintiff had a lot of blood on his face, and Officer Lenhart also described Plaintiff as "bloody." Yet Paramedic Fritz testified that Plaintiff only had a small cut on his lip, an injury that Plaintiff does not even mention in his complaint. Further, both paramedics averred in their declarations that Plaintiff never complained of being assaulted, but Paramedic Hollingsworth testified during his deposition that Plaintiff said his jaw hurt because he had been slammed to the ground during

13

his arrest, and there was dirt on the side of his face. Both paramedics also averred that Plaintiff denied losing consciousness while Plaintiff has consistently maintained that he blacked out following the alleged assault. Paramedic Hollingsworth stated that Plaintiff did not ask to be taken to the hospital. However, Plaintiff testified that he asked the paramedics to take him to the hospital because he had been knocked unconscious and thought he had a broken jaw.

Although Defendants all averred that they did not interfere with the paramedics' treatment of Plaintiff, Plaintiff testified that when he asked the paramedics to take him to the hospital, one of the police officers interrupted and said "ain't nothing wrong with him. He just doesn't want to go to jail" and shut the door to the patrol car where Plaintiff was sitting. Moreover, while the paramedics also testified that the police did not interfere with their examination and treatment of Plaintiff, it is clear that they relied upon the officers' statements as to the source of Plaintiff's injuries in their assessment. Paramedic Hollingsworth testified:

> We got out of the ambulance and approached the police officers to find out what type of run we were – we were dispatched out on. And they basically said that they had detained Mr. Simmons and had – had detained him after he had evaded arrest and that he was complaining of jaw pain. So then we proceeded to go to Mr. Simmons, do our assessment, our physical and verbal assessment.

Doc. 62-1 at 30. Based on the paramedics' testimony, no officer volunteered that Plaintiff had been beaten and kicked repeatedly, including being kneed in the face until he lost consciousness – all facts that this Court must also assume are true.

The Court acknowledges that Plaintiff's patient care report states that the outcome of the paramedics' examination was "Refused By EMS," which Paramedic Hollingsworth testified meant that he and his partner had determined that Plaintiff's injuries did not warrant him going to the hospital in the ambulance, and they were refusing to take him to the hospital "on our own judgment." Doc. 67-12 at 8. However, Plaintiff points to other, circumstantial evidence to

14

support his belief that Defendants "instructed" the paramedics to "look the other way," such as (1) the paramedics' failure to properly fill out his patient care report; (2) their written finding that he had only a cut lip when numerous witnesses, including Defendants, testified that he had blood on his face and head; and (3) conflicting testimony about whether the paramedics examined Plaintiff in the back of a patrol car or in the ambulance.  Doc. 66 at 12-13.

It is axiomatic that this Court cannot make credibility determinations or weigh the evidence in connection with determining whether summary judgment is warranted.  Considering all of the evidence, direct and circumstantial, in Plaintiff's favor, the Court finds that a genuine issue of material fact exists as to whether Defendants interfered with Plaintiff's medical care. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party).

   *C.  Whether Defendants Were Entitled to Rely on the Paramedics' Assessment*

Defendants urge in their summary judgment motion that they should not be held liable for denying Plaintiff adequate medical care because the paramedics assessed Plaintiff's medical condition and determined that he did not need to go to the hospital, and Defendants properly relied on this assessment.  Doc. 61 at 11-12, 20-21.  Plaintiff argues that Defendants cannot rely upon the medical determinations of the paramedics to absolve themselves of liability because it should have been evident to Defendants that Plaintiff was receiving inadequate treatment given his extensive injuries.  Framed another way, Defendants, having administered the alleged beating, were in the best position to assess whether Plaintiff needed immediate additional medical attention and must have known that he did need such attention despite the paramedics' decision to the contrary.

Plaintiffs' argument does have a certain appeal.  The Court again notes that upon the inquiry of the paramedics, the officers mentioned only that Plaintiff had been detained after evading arrest, and nothing of the alleged beating.  Doc. 62-1 at 30.  It is a reasonable inference that if the paramedics had been advised of the nature and extent of the alleged beating, their assessment of Plaintiff's injuries likely would have been different.  Moreover, it is counterintuitive that Defendants be able to rely on the paramedics' assessment where there is evidence that the officers themselves withheld such critical information from the paramedics.

In *Davalos v. Johns*, No. 11-cv-222, 2013 WL 1820313, *1 (N.D. Tex. April 30, 2013) (Solis, J.), an intoxicated plaintiff wrecked her car, after which a paramedic and a police officer arrived at the scene.  The paramedic examined the plaintiff and found no serious injury except for a small bruise on her right eye, which apparently was the result of an earlier fight.  2013 WL 1820313, at *1.  The paramedic then left.  *Id.*  Plaintiff asked the police officer to take her to the hospital, but he instead took her to jail.  *Id*. at 2-3.  She sued the police officer for, among other things, failure to provide proper and timely medical attention.  *Id.* at 3.  The Court granted summary judgment for the police officer insofar as the plaintiff was seeking to hold him liable for denying her medical care related to the car accident.  *Id*. at 12.  The Court noted that a paramedic had examined her shortly after the accident and found no serious injury and unless it would have been evident to a lay person that the paramedic's treatment of the plaintiff was inadequate or inappropriate, the officer could properly rely on the paramedic's examination.  *Id.* at 10.  Because the plaintiff had failed to demonstrate a disputed fact regarding whether the police officer knew or had reason to believe that the paramedic provided an inadequate or inappropriate examination, the Court ruled that the officer was justified in believing that she was in capable hands when the paramedic examined her.  *Id.*

It is most instructive here, however, that in arriving at its decision, the Court in *Davalos* observed that "if non-medical personnel have actual knowledge or a reason to believe that medical personnel improperly examined or failed to examine a person who may have a serious medical need, they are not justified in relying on the medical personnel or their opinions or treatment." *Id.* In the instant case, if Plaintiff's testimony is taken as true, the Defendant officers had reason to believe that the paramedics' assessment was sub-par since they deliberately failed to disclose critical information to the paramedics regarding Plaintiff's claimed injuries, to-wit, that Defendants had just punched and kicked him for several minutes while he was on the ground after he had been handcuffed, Defendant Smith had hit him on the back of the head with a baton, and he had lost consciousness when Defendant Jay kneed him in the face. Doc. 67-1 at 4-8.

*McRaven v. Sanders*, 577 F.3d 974 (8th Cir. 2009), a case cited by the Court in *Davalos*, is also instructive. There, the appellate court upheld the district court's denial of qualified immunity on summary judgment, finding that a detention facility officer did not reasonably rely on a jail nurse's decision that a detainee did not need to be hospitalized because the officer knew the nurse was not aware of the inmate's heavy drug use and that his symptoms were the result of extreme intoxication from drugs rather than alcohol. *Id.* at 981. The *McRaven* court found reliance on the medical assessment unreasonable because the assessment was "grounded on incorrect information," and a lay person would recognize the inadequate or inappropriate treatment given the facts known by the non-medical personnel. *Id.* Here, considering the evidence in the light most favorable to Plaintiff's claims, the Defendants withheld information from the paramedics that was crucial to determining the true nature and extent of Plaintiff's injuries. Thus, upon careful consideration, the undersigned is persuaded by *McRaven*, as previously interpreted by a judge of this Court in *Davalos*, that a jury could reasonably conclude

that the Defendant officers deliberately failed to advise the paramedics of the serious beating inflicted on Plaintiff, thereby depriving the paramedics of information necessary to their assessment and treatment of Plaintiff, and thus interfering with and/or delaying Plaintiff's treatment.

In short, under the rather unique circumstances presented by this case, Plaintiff has established that there is a genuine factual dispute as to whether Defendants had actual knowledge or a reason to believe that the paramedics provided an inadequate or inappropriate examination of Plaintiff such that Defendants were not justified in relying on the paramedics' opinions or treatment and thus violated Plaintiff's clearly established rights. *Farmer*, 511 U.S. at 834; *McRaven*, 577 F.3d at 981. Additionally, Defendants' reliance on the paramedics' decision to not take Plaintiff to the hospital was not objectively reasonable in light of clearly established law. *Collins*, 382 F.3d at 537; *Jacobs* 228 F.3d at 393, 394-96; cf *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (holding that except in "the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.").

Furthermore, notwithstanding that it is disputed, a jury could reasonably credit Plaintiff's testimony and find that Defendants also deliberately ignored his requests for treatment. Doc. 67-1 at 8; Doc. 67-4 at 6-7. And despite Paramedic Hollingsworth's testimony that a broken jaw generally cannot be diagnosed without an x-ray, the risk of harm to Plaintiff should have been obvious to Defendants where, considering the facts in the light most favorable to Plaintiff, he had just been delivered a brutal beating at the Defendants' hands, including being beaten, kicked and kneed to unconsciousness, and subsequently complained of pain to his jaw and that he believed his jaw was broken, all while covered in and spitting blood. Thus, considering all of the

foregoing, the Court concludes that Defendants had subjective knowledge of a substantial and significant risk of serious harm to Plaintiff and then consciously disregarded it. *Farmer*, 511 U.S. at 834; *Jacobs v. W. Feliciana Sheriff's Dept.*, 228 F.3d 388, 395 (5th Cir. 2000). Under the evidence presented and discussed here, it would have been clear to a reasonably competent police officer that Defendants' actions were unlawful at the time of the events at issue. *Saucier*, 533 U.S. at 202. Accordingly, Defendants are not entitled to qualified immunity as to Plaintiff's denial of medical care claim.

## VI. CONCLUSION

For the foregoing reasons, Defendants' *Joint Motion for Partial Summary Judgment*, Doc. 60, should be **DENIED**.

**SO RECOMMENDED** on August 26, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE